UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MEHL, | 2:17-cv-1099 JAM AC PS |
| Plaintiff, | |
| v. | ORDER & FINDINGS AND RECOMMENDATIONS |
| WELLS FARGO HOME MORTGAGE LLC, et al., | |
| Defendants. | |

Plaintiff is proceeding in this action pro se. The action was accordingly referred to the undersigned by Local Rule 302(c)(21). Pending before the undersigned are plaintiff's motion to remand (ECF No. 15) and defendants' motion to dismiss (ECF No. 3). This matter came on for hearing on September 6, 2017. Plaintiff John Mehl appeared in pro se and attorney Scott L. Reigle appeared on behalf of defendant Wells Fargo Bank, N.A. After hearing oral argument, the motions were taken under submission.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff originally filed this action in state court on April 18, 2017, naming as defendants Wells Fargo Home Mortgage, LLC and Wells Fargo Bank, N.A. See ECF No. 1-1. Plaintiff asserts thirteen state law causes of action arising from a 2006 residential home loan and the subsequent denial of loan modification: (1) breach of contract and the implied covenant of good

1

faith and fair dealing; (2) specific performance; (3) breach of Cal. Civ. Code § 2923.5; (4) breach of Cal. Civ. Code § 2924.11; (5) negligence; (6) declaratory judgment and injunctive relief; (7) negligence/gross negligence; (8) slander of title; (9) quiet title; (10) common law restitution/ unjust enrichment; (11) accounting; (12) unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200; and (13) fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200. ECF No. 1-1 at 10-22.[1]

Wells Fargo Bank removed the case to this court on May 25, 2017, on grounds of diversity jurisdiction. ECF No. 1; see 28 U.S.C. § 1441(b).

## III. MOTION TO REMAND

Plaintiff seeks remand to state court, arguing that diversity jurisdiction is defeated by the fact that Wells Fargo Home Mortgage, LLC and plaintiff are both citizens of the State of California. ECF No. 15.

### A. Applicable Legal Standards

The removing party bears the burden of establishing that federal jurisdiction is proper. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal[.]" Id. Diversity jurisdiction is proper where there is complete diversity of citizenship among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

### B. Plaintiff is a Citizen of California

It is undisputed that plaintiff is a citizen of California. See Defendant's Notice of Removal (ECF No. 1 at 2) ("Plaintiff is a California citizen, based on domicile, as he pleads

---

[1] Claim Two and Six for declaratory and injunctive relief will not be considered as separate claims because they are measures of relief. See Stock W., Inc. v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989). Accordingly, plaintiff's request for specific performance (Claim Two) will be discussed at it relates to Claim One. See Lane v. Vitek Real Estate Indus. Grp., 713 F.Supp.2d 1092, 1104 (E.D. Cal. 2010) ("Declaratory and injunctive relief are not independent claims, rather they are forms of relief."). Similarly, plaintiff's request for declaratory and injunctive relief (Claim Six) will be discussed only as it relates to Claim Four. See ECF No. 1-1 at 15 (plaintiff stating he "seeks a judgment declaring that Defendants have not complied" with Cal. Civ. Code § 2924.); see also Shaterian v. Wells Fargo Bank, N.A., 829 F.Supp.2d 873, 888 (N.D.Cal.2011) (a party is not entitled to declaratory relief "absent a viable underlying claim.").

ownership and residency" in Sacramento); Plaintiff's Motion to Remand (ECF No. 15) at 4 ("Plaintiff is a California resident").

### C. Wells Fargo Bank is a Citizen of South Dakota

It is also undisputed that defendant Wells Fargo Bank, N.A. is a citizen of South Dakota. "A national banking association is a citizen only of the state in which its main office is located." Rouse v. Wachovia Mortg., FSB, 747 F.3d 707, 715 (9th Cir. 2014). Because the "main office" of Wells Fargo Bank is located in South Dakota, it is therefore diverse. See ECF No. 1 at 3 ("Wells Fargo, with its main office located in Sioux Falls, is a citizen of South Dakota."); ECF No. 1-2 at 15 (Articles of Association of Wells Fargo Bank, N.A., which state that "[t]he main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota.").

### D. Wells Fargo Home Mortgage, LLC, is Not a Proper Defendant

Plaintiff argues that diversity is defeated because defendant Wells Fargo Home Mortgage, LLC, which has not appeared in the action, is a citizen of California. Plaintiff contends that "[t]he California Secretary of State lists defendant Wells Fargo Home Mortgage, LLC as an active California LLC." ECF No. 15 at 2. In support of this contention, plaintiff has submitted Articles of Organization filed with the California Secretary of State on December 2, 2013, identifying the LLC as "Wells Fargo Home Mortgage, LLC," providing a corporate address in San Francisco, and identifying the agent for service of process as "Anton A. Ewing, Esq." Plaintiff's Request for Judicial Notice (ECF No. 17) at 4. The document is purportedly signed by Anton A. Ewing. Id. Plaintiff also provides a printout from the website of the California Secretary of State, documenting the LLC's "active" status. Id. at 6-7.[2]

Defendant argues that "Wells Fargo Home Mortgage, LLC" is a fictitious entity with no relationship to Wells Fargo Bank. The Bank contends that the putative LLC "was established for

---

[2] Plaintiff seeks judicial notice of these documents. ECF No. 17. Defendants do not oppose the request. The court takes judicial notice of the documents submitted by plaintiff. See Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). As to the Secretary of State's listing of "Wells Fargo Home Mortgage, LLC" as an actively registered LLC, however, the court notes that this status is not probative of the legitimacy of the entity.

3

the purpose of harassing an individual named Anton Ewing with improperly directed service of process documents." ECF No 21 at 2-5. On that basis, the Bank argues that the LLC should be deemed a fraudulently joined party and its citizenship disregarded for purposes of diversity jurisdiction.

An assertion of fraudulent joinder does not necessarily imply that plaintiff has named the improper defendant in bad faith or with fraudulent intent. Rather, fraudulent joinder is a term of art referring in this context to a defendant against whom the plaintiff cannot proceed. See Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "[F]raudulently joined defendants will not defeat removal on diversity grounds." Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." Id. (quoting McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)). The defendant "is entitled to present the facts showing the joinder to be fraudulent." Morris, 236 F.3d at 1067. However, there is a general presumption against fraudulent joinder and therefore it is defendant's burden to prove it by "clear and convincing evidence." Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (citations omitted).

Wells Fargo Bank has presented the Declaration of Shae Smith, the Bank's Vice President for Loan Documentation. ECF No. 21-1. Ms. Smith declares that the entity registered with the California Secretary of State as "Wells Fargo Home Mortgage, LLC" does not have, and has never had, any connection with Wells Fargo Bank, N.A. or any of its parent, subsidiary, or related entities. Id. The Bank has an internal division known as "Wells Fargo Home Mortgage," which is not a separate entity but operates within the Bank's corporate structure. Id. Another entity previously known as "Wells Fargo Home Mortgage, Inc." was an affiliate of the Bank until 2004, when it merged with the Bank and lost its status as a separate entity. Id.

The Bank has also submitted the Declaration of Anton A. Ewing. ECF No. 21-2. Mr. Ewing declares that he has no connection to the purported entity registered with the California Secretary of State as "Wells Fargo Home Mortgage, LLC," did not prepare its Articles of Organization, and did not agree to act as its agent for service of process. Id. Mr. Ewing first

4

learned of the existence of "Wells Fargo Home Mortgage, LLC" when he began being contacted by numerous parties attempting to serve process on him. Because Mr. Ewing has "personally sue[d] every telemarketer that calls me in violation of 47 USC § 227," he believes that "Wells Fargo Home Mortgage, LLC" is "a fraudulent entity established by an embittered telemarketer for the purpose of harassing me." Id.

Defendant has met its burden of establishing by clear and convincing evidence that "Wells Fargo Home Mortgage, LLC" has no relation to Wells Fargo Bank, N.A. or any related financial institution that could conceivably have been involved in the mortgage at issue in this case. Plaintiff's evidence shows only that someone has registered a fictitious LLC with a name intended to be confused with Wells Fargo Bank's mortgage business. Accordingly, plaintiff cannot state a claim against "Wells Fargo Home Mortgage, LLC." Because "Wells Fargo Home Mortgage, LLC" is a fraudulently joined party, its citizenship must be disregarded.

E. Amount in Controversy

It is undisputed that the amount in controversy exceeds $75,000. See ECF No. 1 at 7 ("[T]he loan amount and the value of the Property clearly exceed the $75,000.00 amount in controversy threshold."); Plaintiff's Complaint (ECF No. 1-1) at 24 (plaintiff demands at a minimum $3,000,000 in damages). The amount in controversy requirement is met.

F. Conclusion

Wells Fargo Bank, the only properly joined defendant, is a citizen of South Dakota and plaintiff is a citizen of California. Accordingly, there is complete diversity of citizenship. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, diversity jurisdiction is proper. Plaintiff's motion to remand therefore should be denied.

IV. MOTION TO DISMISS

Defendant moves for dismissal on multiple grounds. ECF No. 3. The Bank contends first that plaintiff "lacks standing to bring this action as an individual" because the underlying 2006 loan was not made to plaintiff as an individual, but was an obligation of a Trust with two trustees: plaintiff and his ex-wife. Accordingly, defendant argues that all claims must be prosecuted on behalf of the Trust, by both trustees jointly acting in their representative capacities. The Bank

argues second that all claims predicated on the alleged invalidity of the 2006 loan and defendant's alleged failure to pay off the ELOC are barred by judicial estoppel because they were not included in plaintiff's 2010 bankruptcy estate. The Bank also challenges the sufficiency of plaintiff's claims under Fed. R. Civ. P. 12(b)(6), as legally or factually deficient for various reasons.[3] The court does not reach the latter issues, as the standing and estoppel issues are sufficient to support dismissal.

### A. Legal Standards on a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In a plausible claim, "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 545); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Iqbal 556 U.S. at 678). The Court must accept plaintiffs' factual allegations as true, but is not required to accept plaintiff's legal conclusions as true. Id. Courts are not required to accept as true legal conclusions that are framed as factual allegations. Id. Complaints by plaintiffs proceeding pro se are construed liberally when being evaluated under Iqbal, with the plaintiff afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

////

---

[3] Defendants have requested that the court take judicial notice of several documents in support of its motion to dismiss. See Defendants' Request for Judicial Notice ("RJN") (ECF No. 3-1). Exhibits A-D, F-G, K-M, relate directly to the property in dispute, Exhibit E relates to the merger of Wells Fargo Bank N.A., and Exhibits H-J relate to plaintiff's bankruptcy proceedings. Plaintiff has not objected to the request. The court takes judicial notice of the documents submitted by defendants. See Fed. R. Evid. 201(d); see also Kelley v. Mortgage Electronic Registration Systems, Inc., 642 F.Supp.2d 1048, 1052-53 (N.D. Cal. 2009) (in actions arising from mortgage disputes, courts may take judicial notice of deed of trusts and documents pertaining to the loan in dispute.).

B. <u>Allegations of the Complaint</u>

On July 14, 2006, plaintiff and then-wife Catherine Mehl, obtained a home loan ("2006 loan") with World Savings Bank ("World Savings") to refinance their real property. The loan repaid in full the first and second Deed of Trust on the real property. However, instead of also repaying the third Deed of Trust held by Wells Fargo Bank, N.A. for $165,000, plaintiff alleges the "title company or the lender paid the sum of $165,000 on a different property" by mistake. ECF No. 1-1 at 5. This resulted in the 2006 loan being placed in second position and the Wells Fargo Bank Deed of Trust in first. Defendants attempted to "fix a part of this mistake" by recording a subordination agreement, however, its effect was only to place the 2006 loan in first priority and the Wells Fargo Deed of Trust in second. Plaintiff alleges that defendants have affirmed in writing their mistake, and have stated they would extinguish the Wells Fargo Deed of Trust and record it with the County Recorder, yet defendants have failed to do so. Plaintiff contends that since World Savings Bank is no longer in existence and that the 2006 loan has been transferred to the defendant, defendant is responsible for properly extinguishing the Wells Fargo Bank Deed of Trust. Plaintiff also alleges that defendant has not lawfully acquired or secured proper documentation of a transfer of interest in the 2006 loan from World Savings or its successors.

Plaintiff further alleges that on February 11, 2016, defendant recorded a Notice of Default ("Notice") with the County Recorder. Defendant signed the Notice, declaring it had complied with Cal. Civ. Code § 2923.5 et al. (Homeowner's Bill of Rights) by contacting plaintiff thirty days prior to recording the Notice. However, in reality defendant made no efforts to contact plaintiff or Catherine Mehl.

Plaintiff also challenges the denial of his loan modification. On October 19, 2016, defendant sent plaintiff a letter denying the loan modification. Plaintiff alleges the denial was defective for failing to undergo a proper "Net Present Value" ("NPV") test and failing to consider other "foreclosure alternatives" as required by Cal. Civ. Code § 2923.7(b)(4). Plaintiff also states he submitted a secondary loan modification package on January 27, 2017 that is currently pending a decision.

C. Effect of Bankruptcy Case

Defendant has produced documents establishing that plaintiff and Catherine Mehl filed for Chapter 7 bankruptcy on December 20, 2010 and received their discharge on April 4, 2011. Defendant's RJN at 56. Defendant relies on the bankruptcy case for its judicial estoppel theory, but the existence of the bankruptcy also presents a standing problem that the court must address first. See D'Lil v. Best Western, 538 F.3d 1031, 1035 (9th Cir. 2008) (court must raise standing issues sua sponte).

1. Only The Bankruptcy Trustee Has Standing To Pursue Claims That Were Part Of The Bankruptcy Estate

A bankruptcy estate is created when a petition for bankruptcy is filed. 11 U.S.C. §541(a) (commencement of a bankruptcy case creates an estate). The property of the bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case." § 541(a)(1). "The scope of section 541 is broad, and includes causes of action." Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir. 1986) (citations omitted). Only the bankruptcy trustee has standing to sue on behalf of the estate. McGuire v. United States, 550 F.3d 903, 914 (9th Cir. 2008). If a debtor "failed to properly schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and [does] not revert to [the debtor]" upon discharge. Cusano v. Klein, 264 F.3d 936, 945 (9th Cir. 2001).

The bankruptcy estate of plaintiff and Catherine Mehl was created when they filed their bankruptcy petition on December 20, 2010. Accordingly, any causes of action that had accrued prior to December 20, 2010 belonged to the bankruptcy estate, and only reverted to plaintiff and his ex-wife upon discharge of bankruptcy if they had been properly listed as assets.

Plaintiff's causes of action predicated on the 2006 loan, and defendant's alleged failure to extinguish the Wells Fargo Deed of Trust, all accrued prior to the Mehl bankruptcy filing as they are based on events prior to December 20, 2010. These claims are: Claim One (breach of contract and the implied covenant of good faith and fair dealing); Claim Two (specific performance); Claim Five (negligence); Claim Eight (slander of title); Claim Nine (quiet title); Claim Ten

(common law restitution/ unjust enrichment); Claim Eleven (accounting); Claim Twelve (unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200); and Claim Thirteen (fraudulent business practices in violation of Cal. Bus. & Prof. Code § 17200).  Accordingly, these claims all became part of the bankruptcy estate.

The court has taken judicial notice of the pertinent documents related to the Mehls' bankruptcy.  Schedule B (Personal Property), Schedule D (Creditors Holding Secured Claims), and the Statement of Financial Affairs all fail to list any causes of action relating to the home loan at issue here.  See Defendant's RJN at 64-67 ("Schedule B- Personal Property"); 70 ("Schedule D- Creditors Holding Secured Claims")[4]; 85-92 ("Statement of Financial Affairs").  Because the pre-bankruptcy claims were omitted from the scheduled assets, they did not revert to the Mehls upon conclusion of the bankruptcy proceeding.  Unless and until the claims have been formally abandoned by the Chapter 7 trustee pursuant to 11 U.S.C. § 554, the trustee is the only party with standing to prosecute them.  See 11 U.S.C. § 554(b), (c).  Accordingly, plaintiff lacks standing and Claims One, Two, Five, and Eight through Thirteen must be dismissed on that basis.[5]

Under other circumstances, plaintiff might be able to re-open his bankruptcy case, amend his schedules to include the causes of action relating to the mortgage loan, seek abandonment of those claims by the trustee, and thus establish standing.  However, doing so in this case would be futile in light of the judicial estoppel effect of the bankruptcy case.  The court turns now to that issue.

          2.   <u>Judicial Estoppel Bars All Claims That Existed At The Time of Bankruptcy</u>

Judicial estoppel bars a debtor from prosecuting a claim not disclosed in his bankruptcy schedules.  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784-85 (9th Cir. 2001).  "In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."

---

[4] Schedule D listed the loan but did not mark it as "disputed."
[5] This defect is independent of the standing problem identified by the Bank.  Even if plaintiff had brought this suit in his representative capacity as trustee, and even if Catherine Mehl appeared as co-trustee, their failure to have identified the claims as assets of the bankruptcy estate would defeat their standing to pursue the claims here.

9

Id. at 783.

> In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action. See, e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir.1993) ("Conceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate, even passively."); Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir.1992) (holding that "[f]ailure to give the required notice [to the bankruptcy court] estops [the plaintiff-debtor] and justifies the grant of summary judgment to the defendants"). The reason is that the plaintiff-debtor represented in the bankruptcy case that no claim existed, so he or she is estopped from representing in the lawsuit that a claim does exist. That basic rule comports fully with the Supreme Court's decision in New Hampshire: (1) the positions are clearly inconsistent ("a claim does not exist" vs. "a claim does exist"); (2) the plaintiff-debtor succeeded in getting the first court (the bankruptcy court) to accept the first position; and (3) the plaintiff-debtor obtained an unfair advantage (discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit). The general rule also comports fully with the policy reasons underlying the doctrine of judicial estoppel: to prevent litigants from playing "fast and loose" with the courts and to protect the integrity of the judicial system. New Hampshire, 532 U.S. at 749–50, 121 S.Ct. 1808.

Ah Quin v. Cty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013).

Not only will judicial estoppel be imposed when the debtor had enough facts to know that a potential cause of action existed during the pendency of the bankruptcy, but its application is also appropriate to "bar litigants from making incompatible statement in two different cases." Hamilton, 270 F.3d at 783.

In this case, the plaintiff-debtor omitted causes of action from his bankruptcy schedules, and obtained a discharge. Accordingly, the default rule of judicial estoppel applies. See id. Even though there is no indication that plaintiff meant to commit a fraud on the bankruptcy court, the rationale for the doctrine fully supports is application here. In short, plaintiff and Catherine Mehl represented in bankruptcy court not only that they had no causes of action, but that the loan at issue here was not disputed. See n. 4, supra. Accordingly, plaintiff has taken clearly inconsistent positions in this court and in the bankruptcy court.

The discharge of the bankruptcy demonstrates that plaintiff's earlier position was accepted by the bankruptcy court. When the trustee issued a Report of No Distribution, the trustee relied on the representations plaintiff and Ms. Mehl made in their disclosures. See RJN at 58; see also Hamilton, 270 F.3d at 784. ("The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's nondisclosure of potential claims in many other ways."). Subsequently, the bankruptcy court issued a discharge based on the trustee's report. And because plaintiff obtained discharge without his creditors having a full understanding of his assets, plaintiff obtained an unfair advantage.[6]

For these reasons, plaintiff is estopped from bringing Claims One, Two, Five, and Eight through Thirteen. Accordingly, dismissal should be with prejudice.

### D. As To The Remaining Claims, Plaintiff Has Not Established That He Is The Sole Real Party In Interest

Claims Three (breach of Cal. Civ. Code § 2923.5), Four (breach of Cal. Civ. Code § 2924.11), Six (declaratory judgment and injunctive relief), and Seven (negligence/gross negligence) all arise from events related to defendant's handling of the loan and requested loan modification following plaintiff's bankruptcy. Plaintiff is therefore not collaterally estopped from bringing them. Accordingly, the court considers defendant's challenge to plaintiff's "standing" to pursue these claims.

Defendant argues that plaintiff lacks standing in his individual capacity because the real party in interest, pursuant to Fed. R. Civ. P. 17(a), is the Trust that held title to the subject property. ECF No. 3 at 22. The rule provides, in relevant part, that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). A real party of interest is "any party to whom the relevant substantive law grants a cause of action." U-Haul

---

[6] In this regard, the undersigned makes no evaluation of the merits of plaintiff's claims or his potential recovery. It is enough that his creditors were not given a complete or accurate picture of the Mehls' financial and legal situation in the bankruptcy proceeding. In this civil proceeding, plaintiff seeks general, special, and exemplary damages in the amount of $1,000,000 each, as well as various civil penalties and several forms of equitable relief. See ECF No. 1-1 at 23-24. In other words, plaintiff himself is now claiming that the causes of action undisclosed in bankruptcy are worth a great deal of money.

11

Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1038 (9th Cir. 1986). In a diversity case, such as this one, the applicable state law governs the identification of the real party in interest. Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1093–94 (9th Cir. 2004).

Although defendant frames this issue in terms of "standing," it is not really a question of standing but one of plaintiff's ability to state a claim in his individual capacity.[7] Defendant does, however, raise important threshold questions about the capacity in which plaintiff brings this suit, and about the absence of indispensable parties.

Plaintiff's claims all involve rights and obligations related to the subject residential property and the 2006 loan secured by that property. Defendant has submitted documents establishing that on December 11, 2000, plaintiff and Catherine Mehl deeded their real property to the "John and Catherine Mehl Family Revocable Trust established 12/11/2000" ("Revocable Trust"). RJN at 7. On July 14, 2006, the Revocable Trust took out a $320,000 loan with World Savings (the "2006 loan"). RJN at 10. The 2006 loan documents identify the borrowers as "Catherine Cahill Mehl and John Glen Mehl, Wife and Husband, and John Mehl and Catherine C. Mehl, Trustees of the John Mehl and Catherine Mehl Family Revocable Trust Established 12/11, 2000." RJN at 14.[8] Accordingly, the property is held by the Mehls as trustees, and the loan obligates them both as trustees and as individuals.

Although plaintiff is personally obligated on the loan, so is the trust; the rights plaintiff asserts in this lawsuit all derive from his rights as owner of the subject property. That ownership interest lies exclusively with the Mehls in their capacity as trustees. See RJN at 7-8; 10-12.

---

[7] Standing is a constitutional requirement; the real party in interest requirement is a prudential consideration that governs who may present a claim. This is best understood not as a standing issue but as a question about whether a putative plaintiff has a cause of action – the paradigmatic question under Fed. R. Civ. P. 12(b)(6). See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386-87 (2014).

[8] Moreover, the loan documents state: "OBLIGATIONS OF PERSONS UNDER THE NOTE. If more than on person signed this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed…The Lender may enforce its rights under the Note against each person individually or against all of us together. This means that any one of us may be requires paying all of the amounts owned under the Note." RJN at 17. The loan also includes four signatures for the borrowers, explicitly separating signatures on behalf of the Revocable Trust and signatures on behalf of the individuals. See RJN at 19.

Accordingly, plaintiff must bring suit in his capacity as trustee. See Estate of Giraldin, 55 Cal.4th 1058, 1075 (2012) ("The trustee is the real party in interest with standing to sue and defend on the trust's behalf."). The capacity in which plaintiff himself brings suit is a pleading defect which is easily remedied. More problematic is that, at least to the extent that Catherine Mehl remains a co-trustee and/or obligated on the loan, she is an indispensable party without whom plaintiff cannot proceed. See FRCP 19(a)(1); Virginia Surety Co. v. Northrop Grumman Corp., 144 F.3d 1243, 1248 (9th Cir. 1998).[9]

Because the action is not being prosecuted in the name of the real party in interest, and may not proceed without joinder of all required parties, it must be dismissed. It is possible that plaintiff may be able to cure the deficiency by amendment. Plaintiff indicated at oral argument that after his divorce from Ms. Mehl, the real property which secured the 2006 loan was "removed" from the Revocable Trust and was "quit-claimed" to him. The current status of Ms. Mehl's interest in the property and her present relationship to the loan are unclear to the court despite the parties' extensive (and somewhat contradictory) representations. Accordingly, plaintiff should have an opportunity to amend the complaint as to Claims Three, Four, Six and Seven and either (1) join Ms. Mehl as co-plaintiff, or (2) provide specific factual allegations and supporting documentation regarding the status of the trust and Ms. Mehl's removal from ownership and obligation vis-à-vis the subject property and the loan.

## VI. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's Motion to Remand (ECF No. 15) be DENIED;

2. Defendant's Motion to Dismiss (ECF No. 3) be GRANTED as follows:

    a. Plaintiff's claims 1, 2, 5, 8, 9, 10, 11, 12, 13 be dismissed with prejudice; and

    b. Claims 3, 4, 6 and 7 be dismissed with leave to amend.

These findings and recommendations are submitted to the United States District Judge

---

[9] See also Cal. Prob. Code §15620 ("Unless otherwise provided in the trust instrument, a power vested in two or more trustees may only be exercised by their unanimous action.").

13

| | |
|---|---|
| 1 | assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days |
| 2 | after being served with these findings and recommendations, any party may file written |
| 3 | objections with the court and serve a copy on all parties. <u>Id.</u>; <u>see also</u> Local Rule 304(b). Such a |
| 4 | document should be captioned "Objections to Magistrate Judge's Findings and |
| 5 | Recommendations." Any response to the objections shall be filed with the court and served on all |
| 6 | parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file |
| 7 | objections within the specified time may waive the right to appeal the District Court's order. |
| 8 | <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 |
| 9 | (9th Cir. 1991). |
| 10 | DATED: March 19, 2018 |

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE